UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIMBERLY LISHMAN, | ) | CIVIL NO. 3:19-CV-1817 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICON GENERAL | ) | (ARBUCKLE, M.J.) |
| CONTRACTORS INC., | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

I.  INTRODUCTION

Kimberly Lishman ("Plaintiff"), now a *pro se* litigant, brought suit seeking damages for alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* In her Complaint, Plaintiff identifies herself as a recovering opiate addict who participates in an opiate maintenance program. She alleges that, due to her status as a recovering addict and participation in an opiate maintenance program, Defendant Americon General Contractors, Inc. ("Defendant") refused to hire her for a housekeeping position.

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 18).

Presently before the Court is Defendant's Motion to Dismiss for Lack of Prosecution. (Doc. 29). For the reasons explained below, Defendant's Motion is GRANTED.

II.     BACKGROUND & PROCEDURAL HISTORY

According to her Complaint, Plaintiff was interviewed by Defendant's Manager, Richard Keagle ("Keagle"), for a Housekeeper position with Defendant on May 23, 2019. (Doc. 1, ¶ 13). During the interview, Keagle questioned Plaintiff about her prior drug use and Plaintiff admitted she was a recovering opiate addict. (Doc. 1, ¶¶ 14-15). The interview continued and Keagle explained the responsibilities of the job and the hours of the position. (Doc. 1, ¶ 16). At the end of the interview, Keagle gave Plaintiff an "Americon New Employee Training Program (Housekeeping)" and other training materials. (Doc. 1, ¶¶ 17-18). These documents further described the requirements for the position. (Doc. 1, ¶ 18). Close to the end of the interview, Keagle asked one more question, whether Plaintiff was enrolled in any opiate maintenance programs like a Suboxone[1] or Methadone maintenance program. (Doc. 1, ¶¶ 18-19). Plaintiff admitted she was in a Suboxone maintenance program and Keagle responded that he could not offer Plaintiff a job because "Kenny [Defendant's President] doesn't hire people who take Suboxone." (Doc. 1, ¶¶ 20-21). Several weeks after the interview, after Keagle was informed that Plaintiff

---

[1] Suboxone is a mix of buprenorphine and naloxone "used to treat adults who are addicted to (dependent on) opioid drugs (either prescription or illegal) as part of a complete treatment program that also includes counseling and behavioral therapy." *For opioid dependence: SUBOXONE® (buprenorphine and naloxone) Sublingual Film (CIII)*, SUBOXONE, https://www.suboxone.com/ (last visited Feb. 11, 2021).

retained counsel, he contacted Plaintiff for a new interview, which Plaintiff declined. (Doc. 1, ¶ 22, n. 1).

On October 21, 2019, Plaintiff filed a counseled Complaint (Doc. 1), alleging Defendant violated the ADA. (Doc. 1, ¶ 9). As relief, Plaintiff seeks: (1) monetary damages, including punitive damages; (2) attorneys' fees and expenses and; (3) other equitable relief the Court deems just. (Doc. 1, p. 7). Plaintiff also demands a jury trial. *Id.*

On July 9, 2020, Plaintiff's counsel sought leave to withdraw his appearance. (Doc. 22). The Court directed Plaintiff to respond to her counsel's motion on or before August 28, 2020. (Doc. 24). Plaintiff did not filed a response. On September 11, 2020, the Court granted Plaintiff's counsel's motion to withdraw. (Doc. 25).

After Plaintiff's counsel's Motion to withdraw was granted, Plaintiff was given the opportunity to find new counsel. (Doc. 25). No new counsel has entered an appearance. On October 5, 2020, the Court held a telephone conference to discuss the status of the case. (Doc. 26). Plaintiff did not appear. Plaintiff was reached via telephone on October 7, 2020 by the court's staff, but Plaintiff stated she did not wish to proceed with the case. (Doc. 28). Plaintiff was given until November 6, 2020 to file a Notice of Dismissal. (Doc. 28). Plaintiff did not file a notice of dismissal.

On November 11, 2020, Defendant filed a Motion to Dismiss for Failure to Prosecute (Doc. 29). On November 24, 2020, Defendant filed a Supplement to the

Motion to Dismiss (Doc. 30) and a Brief in Support (Doc. 31). On December 17, 2020, I filed an Order allowing Plaintiff to file a Brief in Opposition on or before January 4, 2021. (Doc. 32). At this time, Plaintiff has not filed a brief in opposition.

III. LEGAL STANDARD

Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff failed to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the Court and will not be disturbed absent an abuse of that discretion. *Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002) (citations omitted). That discretion, while broad, is governed by certain factors, common referred to as *Poulis* factors.

> As the United State Court of Appeals for the Third Circuit has noted:
>
> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defends. *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984).

*Emerson*, 296 F.3d at 190.

In exercising this discretion, "there is no 'magic formula' that we apply to determine whether a District Court has abused its discretion in dismissing for failure to prosecute." *Lopez v. Cousins*, 435 F. App'x 113, 116 (3d Cir. 2011) (quoting *Briscoe v. Klaus*, 538 F.3d 252 (3d Cir. 2008)). Therefore, "[i]n balancing the *Poulis* factors, [courts] do not employ a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's case." *Briscoe*, 538 F.3d at 263 (quoting *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992)). Consistent with this view, it is well-settled that "no single *Poulis* factor is dispositive," and that "not all of the *Poulis* factors need be satisfied in order to dismiss a complaint." *Briscoe*, 538 F.3d at 263 (internal citations and quotations omitted). Moreover, recognizing the broad discretion conferred upon the District Court in making judgments weighing these six factors, the Court of Appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amendable to any lesser sanction. *See e.g.*, *Emerson*, 296 F.3d 184; *Tillio v. Mendelsohn*, 256 F. App'x 509 (3d Cir. 2007); *Reshard v. Lankenau Hospital*, 256 F. App'x 506 (3d Cir. 2007); *Abubuko v. Bell National Organization*, 243 F. App'x 728 (3d Cir. 2007).

IV.   DISCUSSION

Defendant argues that this case should be dismissed due to Plaintiff's failure to prosecute. In support of that position, Defendant argues:

> In this case, the Plaintiff has taken no action to advance or pursue this case since the withdrawal of counsel (and failed to even respond or acknowledge her counsel's motion). Plaintiff has failed to appear or participate in status conferences or comply with the orders of the Court. Plaintiff has not contacted or responded to the undersigned counsel regarding this matter. Ultimately, Plaintiff advised Court staff that she did not wish to pursue this action. Plaintiff has abandoned this action and it should be dismissed.

(Doc. 31, p. 4). Although Defendant merely identifies, and does not apply the *Poulis* factors in its Motion or Brief, I conclude that assessment of these factors weighs in favor of dismissal.

The first *Poulis* factor, the extent of Plaintiff's personal responsibility, weighs in favor of dismissal. Plaintiff is proceeding as a *pro se* litigant because her counsel withdrew due to a "fundamental disagreement . . . concerning litigation strategy." (Doc. 22, ¶ 5). As a *pro se* litigant, Plaintiff is responsible for submitting responses when requested (Docs. 25, 28), participating in scheduled conferences, and is responsible for responding to Motions filed by opposing counsel if she opposes them (Doc. 32).

The second *Poulis* factor, the prejudice to Defendant caused by Plaintiff's failure to participate in this case, also weighs in favor of dismissal. Examples of prejudice are "the irretrievable loss of evidence, the inevitable dimming of

witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Scarborough v. Eubanks*, 747 F.2d 871, 876 (3d Cir. 1984). Prejudice for purposes of the *Poulis* analysis, however, does not mean irremediable harm. *Ware,* 322 F.3d at 222. "[T]he burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial." *Id.* Therefore, Plaintiff's failure to attend telephone conferences scheduled by the Court, failure to communicate with Defendant, and failure to respond to Court filings (like Defendant's Motion to Dismiss) frustrates Defendant's interest in timely resolution of this case.

The third *Poulis* factor, history of dilatoriness, also weighs in favor of dismissal. While "conduct that occurs one or two times is insufficient to demonstrate a 'history of dilatoriness,'" *Briscoe*, 538 F.3d at 261, "[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Adams v. Trustees of New Jersey Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 874 (3d Cir. 1994). A "party's problematic acts must be evaluated in light of [her] behavior over the life of the case." *Id.* At 875. Plaintiff has failed to respond to several orders (Docs. 24, 28), failed to participate in a telephone conference scheduled by the Court, and failed to respond to Defendant's Motion to Dismiss after

being directed to do so (Doc. 32). This consistent non-response demonstrates a history of dilatoriness.

The fourth *Poulis* factor, whether Plaintiff's failure to respond to Defendant's Motion was willful or in bad faith, weighs in favor of dismissal. There is nothing to indicate that Plaintiff has not received the Court's Orders. Plaintiff's failure to respond as ordered suggests that she no longer intends to participate in this case. Courts have held where there is no indication that a plaintiff's failure to participate was from excusable neglect, "the conclusion that [their] failure is willful is inescapable." *Palmer v. Rustin*, No. 10-42, 2011 WL 5101774, at *2 (W.D. Pa. Oct. 25, 2011).

The fifth *Poulis* factor, the effectiveness of other sanctions, weighs in favor of dismissal. Dismissal is a sanction of last resort, and it is incumbent upon a court to explore the effectiveness of lesser sanctions before ordering dismissal. *Poulis*, 747 F.2d at 868. However, courts have held that when confronted with a *pro se* litigant who will not comply with rules or court orders, lesser sanctions may not be an effective alternative. *Briscoe*, 538 F.3d at 262-63. This case presents such a situation. Plaintiff is a *pro se* litigant. Several orders have been issued counseling Plaintiff on her obligations, and Plaintiff has declined to file the responses requested by those orders.

The sixth and final factor, the meritoriousness of Plaintiff's claims, weighs against dismissal. A claim . . . will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff . . . ." *Poulis*, 747 F.2d at 869-70. Plaintiff may have pleaded a plausible claim under the ADA. *See Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 306 (3d Cir. 1999) (outlining elements of a prima facie case under the ADA). Plaintiff alleges that she is a disabled person (recovering opiate addict), was qualified for the housekeeping position, and was not hired due to her participation in a maintenance program.

In considering the balance of the six *Poulis* factors in this case, I find that dismissal is appropriate. Five *Poulis* factors weigh in favor of dismissal, while one (the meritoriousness of Plaintiff's claim) weighs against it. However, no matter how much merit a claim has, to obtain relief a Plaintiff must pursue that claim. Plaintiff's conduct in this case of failing to participate is incompatible with maintaining this lawsuit.

V.   CONCLUSION

Accordingly, I find that:

(1)   Defendant's Motion to Dismiss (Doc. 29) is GRANTED.

(2)   An appropriate order will issue

Date: June 9, 2021

BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge